Upon review of the competent evidence of record with respect to the errors assigned, the Full Commission finds good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Decision and Order of the Deputy Commissioner and enters the following Decision and Order.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 24 February 1997 as:
 STIPULATIONS
1. William Friday, Christopher C. Fordham, III, Mary Sullivan, Don Boulton, John Swafford were employees of the University of North Carolina at Chapel Hill and the State of North Carolina on 15 January 1985.
2. John Graham, Jay Tobin, Warren Bane, and Pat Murphy were students at the said university in the years 1984 and 1985 and on the junior varsity cheerleading squad.
3. Plaintiff's Exhibits 1, 2 and 3 and Defendant's Exhibit 1 are stipulated into the record, being 300 pages of medical records, video tape recording of deposition of Dr. John A. Messenheimer, video tape recording of deposition of Dr. Marc A. Rabinoff, and video tape recording of deposition of Lance Wagers, respectively.
4. The following deposition transcripts with respect to which all Motions and Objections have been duly considered under the applicable law and rules of evidence:
a. Deposition of Marc A. Rabinoff, Ed.D. dated 17 March 1995.
b. Deposition of John A. Messenheimer, M.D. dated 21 September 1995.
c. Deposition of Mary Sullivan dated 19 November 1993.
d. Deposition of Robert Lee Stallings dated 16 April 1994.
e. Deposition of Donald A. Boulton dated 13 March 1997.
f. Deposition of Lance Wagers dated 11 September 1996.
5. In the event the issues are found in favor of plaintiff and against defendant, the damages will be in the maximum amount of $100,000.00.
6. At the hearing on 24 February 1997, the parties introduced the following exhibits which have been admitted into the record:
a. Plaintiff's Exhibit 4, marked P4, consisting of a memorandum dated 3 October 1980.
b. Plaintiff's Exhibit 5, marked P5, consisting of a letter dated 29 April 1981.
c. Plaintiff's Exhibit 6, marked P6, consisting of a news article from the N.C.A.A.
d. Plaintiff's Exhibit 7, marked P7, consisting of an article from Better Homes and Gardens.
e. Plaintiff's Exhibit 8, marked P8, consisting of a letter dated 26 August 1983.
f. Plaintiff's Exhibits 9 through 17, marked P9 through P17, consisting of various documents dealing with budgetary matters and cheerleader matters to all of which defendant objects with the exception of P9, P14 and P15.
g. Defendant's Exhibit 2, marked D2, consisting of various documents dated from 25 August 1981 to 25 October 1983.
***********
Based upon the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 15 January 1985 and prior thereto, defendant sponsored student cheerleading squads. These squads, varsity and junior varsity, were maintained through its Vice-Chancellor, Dean of Student Affairs and Associate Vice-Chancellor of Student Affairs, employees of defendant. The cheerleading squads appeared on behalf of defendant at sports, athletic and other entertainment and promotional events. Defendant supplied uniforms, a place for practice, travel funds, and an administrator who was in charge of travel arrangements, practice dates, and supervision.
2. As of 15 January 1985, plaintiff was a member of the junior varsity cheerleading squad. At the direction and under the supervision of defendant, members of the junior varsity squad were not allowed to be seen drinking alcoholic beverages in public, were to maintain certain grade point averages, and were given academic credits in the physical education program for their participation on the cheerleading squad at defendant's athletic and promotional events.
3. On the evening of 15 January 1985, the junior varsity cheerleaders were practicing on the hardwood floor of Carmichael Gymnasium on defendant's campus. Plaintiff and her squad were performing a 2 1/2-tier pyramid stunt, in which plaintiff was held on the hand of a male cheerleader at the top of the pyramid while he stood on the shoulders of two other cheerleaders who were standing on the hardwood floor of the gymnasium. The pyramid became unsteady and plaintiff fell from a height of approximately thirteen feet, through the arms of a spotter, who failed to break her fall. Plaintiff hit her head on the hardwood floor, sustaining a closed-head injury with permanent brain damage and serious bodily injury.
4. Plaintiff had not been the cheerleader on top of the 2-tier pyramid stunt prior to early December 1984. She was selected for that position by other members of the squad only after the person previously in the position was injured in a fall.
5. In December 1984, prior to the holiday break, the squad practiced the pyramid stunt with plaintiff in the top position. After returning from break, plaintiff and the squad resumed practicing the pyramid, with plaintiff on top, during the first two weeks of January 1985.
6. At the hearing before Deputy Commissioner Ford, both Mr. John Graham and Mr. Jay Tobin testified regarding the number of spotters used by the squad at the time of the incident in question. While Mr. Graham's testimony was equivocal, Mr. Tobin, who was co-head of the squad, was clear in his testimony that there were three spotters being used when the squad attempted the pyramid in question on 15 January 1985. The undersigned give greater weight to the testimony of Mr. Tobin on this issue.
7. Defendant provided protective floor covering mats to the junior varsity cheerleading squad, and the mates were used by the team during routine practices at the Fetzer Gym facility. However, as plaintiff and the other team members were aware, the squad did not use mats when it practiced prior to games at Carmichael gymnasium.
8. Although the Atlantic Coast Conference (ACC) had banned pyramids greater than two persons high in May 1983, this prohibition was rescinded in October 1983 when the conference determined that it should not regulate cheerleading at its schools. Furthermore, on 15 January 1985, there were no conference or National Collegiate Athletic Association (NCAA) rules which required that 2-tier pyramids be performed or practiced only in the presence and under the supervision of a coach.
9. Defendant did not owe plaintiff a duty to provide coaching or faculty supervision to monitor the activities and stunts of the cheerleading squad, nor did defendant owe plaintiff a duty to prohibit 2-tier pyramid stunts. This absence of an affirmative duty is not only reasonable in terms of defendant's responsibilities, but also serves to protect student autonomy.
10. Plaintiff failed to produce sufficient evidence that any named employee of defendant breached any duty owed to her or was negligent.
***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
Defendants' named employees did not breach any legal duty owed to plaintiff, nor did they commit any acts of negligence which proximately resulted in plaintiff's injuries; therefore, plaintiff is not eligible to recover under the Act. G.S. 143-291.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the Decision and Order of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim is hereby denied.
2. Each side shall pay its own costs.
This the ___ day of August 1999.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/_____________ THOMAS J. BOLCH COMMISSIONER